

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ MAY 1 1 2005 ★
BROOKLYN OFFICE

MEMORANDUM TO
THE HONORABLE NICHOLAS G. GARAUFIS
UNITED STATES DISTRICT JUDGE

RE: **David Lavender**
ED/NY Docket #: 00 CR 1248(S-2)
<u>Status Report</u>

The above-captioned releasee was sentenced on May 7, 2003 by Your Honor after having pled guilty to 18 U.S.C. 371, Conspiracy to Commit Securities Fraud, a class D felony, and 15 U.S.C. 78j(b) and 78ff, Securities Fraud, a class C felony. The offender was sentenced to a 26 month term of imprisonment and was released on February 16, 2004 to begin a three year term of supervised release. The Court also imposed special conditions requiring the offender to: attend a substance abuse treatment program; provide full financial disclosure; and, pay a $200 special assessment. The offender is also serving a concurrent term of supervised release stemming from a Southern District of New York Securities Fraud case which predated the instant case. The purpose of this memorandum is to inform Your Honor of recent developments in this case and to request Your approval on our intended course of action.

Since the offender began his term of supervised release, he has maintained full-time employment as a consultant for a subsidiary of a Brooklyn-based mortgage company. Because of his felony conviction, New York State laws prohibit the offender from holding a position of either mortgage broker or loan officer. The undersigned had interviewed both his employer -who was aware of his criminal status- and the Assistant Director of the New York State Banking Department to confirm that the offender's job functions were in compliance with all local laws. Recently issued New York State Banking regulations, however, restrict the field even more for those with felony backgrounds. In essence, offenders with a qualifying felony conviction may not work in the industry. This offender's instant Federal Fraud conviction is one of those qualifying felonies.

In February 2004, the offender was tentatively offered a salesperson position with an on-line business guide in Scottsdale, Arizona. Because the offender was in compliance with his conditions and the position was not limited by any regulatory body, the undersigned approved a temporary travel permit for the offender to travel to Scottsdale to attend a week-long job orientation. During this time, the offender complied with our directive to report to the Federal probation office which was also located in Scottsdale, AZ. After a job position was formally offered to the offender, a package was forwarded to the District of Arizona (D/AZ) requesting that they provide courtesy supervision with a view towards accepting a transfer of this case. This is the standard nationwide procedure in such cases. The D/AZ was advised that the offender had an established job offer and was residing in a long-term hotel suite nearby until he could establish his own residence. They were also advised that the offender had a history of alcoholism but that he had been attending an

out-patient substance abuse treatment program and also voluntarily attending daily Alcoholics Anonymous (AA) meetings. Although the offender had already begun attending local AA meetings in Scottsdale, the D/AZ was asked to have the offender referred to a local out-patient program to continue his treatment services.

On April 7, 2005, the D/AZ forwarded correspondence reporting that the offender would not be assigned to a D/AZ probation officer adding that the relocation request would be denied on two bases. First, the offender's employment did not "constitute a legitimate job offer or transfer opportunity within the meaning of our guidelines." (The employment would have been approved had the offender, for example worked for the company in a New York office and was subsequently transferred to Arizona.) Secondly, the D/AZ stated that the offender had no historical or familial ties to Arizona.

During a telephone conversation with a Supervising U.S. Probation Officer (SUSPO) from the D/AZ, the undersigned was advised that the D/AZ did not want their offender population to grow in relation to their state's increasing general population. Although the offender is not a risk of flight or a known drug trafficker, the SUSPO also cited their district's proximity to the border. Aside from the illegitimacy of the D/AZ's rationale, and the fact that this decision is contrary to the policy of the Administrative Office of the U.S. Courts, this district finds the decision to deny the relocation, especially without even having met the offender, simply unjust. The offender is working a legitimate job and is already earning over $5,000 a month in sales commissions. His mother is planning on spending six months out of the year in Arizona to be with the offender and the offender's AA sponsor has also relocated to Scottsdale after the offender helped him secure a position with the same company. The offender has followed every directive issued by the undersigned, a Drug and Alcohol Treatment Specialist (DATS), since arriving in Scottsdale. After having his relocation denied, the DATS informed the offender that the Court in ED/NY would be advised of his situation. In the interim, he was directed to schedule an intake at a state certified out-patient substance abuse program; he complied with the directive that day and is paying for the cost of treatment out-of-pocket.

The offender has permitted the DATS to discuss his employment and supervision issues with his employer and they, too, are supportive of the offender. The offender has been submitting documentation of his earnings as a contracted 1099 employee. This district is confident that the offender's relocation to Arizona is viable and beneficial for him. He has the sober support and the financial wherewithal to facilitate his continued recovery from his alcohol addiction; and, he continues to utilize all available resources to assist him in this lifelong endeavor.

Based on the above, the Probation Department respectfully recommends that the offender be permitted to remain in Arizona and allow our district to supervise him from afar. The offender is reporting by telephone twice a week and is submitting all necessary and required paperwork. To assist us in the supervision process, we are also maintaining close

liaisons with his employer, AA sponsor, and counselors (who are collecting weekly drug and alcohol tests). The offender fully understands that his future actions will dictate whether he will be permitted to remain in Arizona. If his actions dramatically change and he becomes a liability and is determined to be unamenable to this type of supervision, he may be summoned back to New York.

If Your Honor consents to this intended course of action, we will respectfully relate our intentions to our peers in the D/AZ and will continue to closely monitor the offender and his compliance to the terms of his Supervised Release. We await Your Honor's decision in this matter.

Submitted by: _____
Christopher Wodzinski
Senior U.S. Probation Officer

Approved by: _____
Lawrence M. Cavgnetto
Supervising U.S. Probation Officer

_____
Andrew Bobbe
Senior Deputy Chief U.S. Probation Officer

May 3, 2005


The offender may remain
in the D/AZ and be
supervised by the ED/NY: _____
                          U.S.D.J.         Date 5/5/05


Other: _____


_____
U.S.D.J.         Date